GULOTTA, Judge
(dissenting).
I concur with the conclusions reached in the majority opinion relative to the amount of the award for the injury, pain, suffering, inconvenience, and residual discomfort sustained by plaintiff; but I respectfully dissent from that part of the opinion that denies to the plaintiff damages for impairment of earning capacity and loss of earnings.
It is apparent that the amount of the jury award was not predicated solely on the seriousness of the injury sustained by plaintiff; and thus the injury itself did not constitute the only item of damages considered in the award because the nature of the injury was not commensurate with the amount awarded by the jury. While the record does not disclose the basis of the award, it is apparent that the loss or impairment of the earning capacity of plaintiff weighed heavily in the mind of the jury in its deliberations.
The question therefore is whether the record substantiates the award given by the jury when a substantial part of its award was based on the impairment of future earning capacity of the plaintiff as well as his reduction in earnings from the date of the injury to the time of the trial.
The majority concludes that the jury abused its discretion in including loss of earnings and impairment of future earning capacity as items of damages. I disagree with this conclusion.
Although the majority properly concluded that the severity of the whiplash injury caused an acceleration or aggravation of a pre-existing cervical degenerative condition, I am nevertheless of the opinion that the majority erred in determining that this injury did not result in loss of earnings and the impairment of earning capacity and in concluding that the jury abused the broad discretion reposed in it.
The Supreme Court in Viator v. Gilbert, cited by the majority, has set forth guidelines to be used in the recovery for loss of future earnings. The Supreme Court took cognizance that an allowance for monetary damages for loss of future earnings cannot be calculated with mathematical exactitude and thus, to some extent, is speculative in character and therefore courts must exercise some judicial discretion in determining the amount of these awards.
The plaintiff’s physical condition prior to the accident, his work record, the amount of his earnings, and the probability or improbability that he would have been able to earn similar amounts for a number of years except for the disability brought about or aggravated by the accident are some of the considerations for determining quantum for damages for loss of future earnings as set out in the Viator case.
In the case of Courville v. B. & B. Engineering and Supply Company, 230 So.2d 377, 382 (La.App. 1st Cir. 1969) the court in discussing whether plaintiff should be given an award for loss of future earnings used language similar to the court in Via-tor:
“An award for loss of future earnings cannot be made on any scientific basis; neither can it be determined with mathematical certainty. However, where it appears reasonably certain and probable *91 that a loss of earning capacity zvill he experienced, the courts will exercise a sound discretion and award such recovery therefor as appears just and fair to both litigants under the circumstances. Kezerle v. Hardware Mutual Casualty Company, La.App., 198 So.2d 119; Stevens v. Liberty Mutual Insurance Company, La.App., 133 So.2d 1, affirmed 242 La. 1006, 141 So.2d 346. * * * ”
(emphasis added)
See also: Hughes v. New Orleans Public Service, Inc., 221 So.2d 331 (La.App. 4th Cir. 1969).
Thus, an additional requirement is that the loss be proved with reasonable certainty and not be purely speculative in nature.
Clearly, if the evidence preponderates that plaintiff’s earning capacity has been impaired due to injury and that the amount of the impairment and loss is ascertainable with reasonable certainty, then the award should include this loss as an item of damages and the findings of the jury should not be disturbed.
The record reflects that the difference in rate of pay of a construction electrician at the time of the accident was $1.01 more per hour than that of a maintenance electrician.
It is uncontradicted that plaintiff was in sound physical condition prior to the accident and that plaintiff’s work record at this time was exemplary. Further, it is significant that none of the witnesses, neither medical experts nor lay witnesses, doubted the sincerity of plaintiff’s complaint of pain or his complaint of inability to do work as a construction electrician because of his discomfort and pain. An exception is the statement of Dr. G. Gernon Brown, Jr., defendant’s only witness, who testified, after having seen plaintiff on only one occasion, that he found no reason for impairment in plaintiff’s ability to work. His testimony is not only unsupported but contradicted by other medical evidence, by testimony of the plaintiff and plaintiff’s wife, as well as by the testimony of plaintiff’s former employer who is knowledgeable in the duties of a construction electrician as compared with those of a maintenance electrician.
The realization that plaintiff had suffered pain for a three-year period subsequent to the date of the injury and that the pain was prevalent up to and during the time of trial is reflected in the majority opinion. In denying plaintiff’s recovery for impairment of future earning capacity, however, the majority places weight on the fact that plaintiff had a commendable work record subsequent to the injury. This observation might have validity were plaintiff claiming an inability to work because of his injury; however, plaintiff’s claim is not that he is unable to be gainfully employed, but that there has been a diminution of his earning capacity. Hence, it should not be overlooked that the exemplary work record of plaintiff was compiled while he was discharging the physical duties required of a maintenance electrician.
Additionally, the jury had the benefit of the testimony of Robert P. Fluger, Jr., an electrical contractor and former employer of plaintiff, who testified that plaintiff discontinued employment with him because he was unable to do construction electrical work. He related that electrical work in construction requires more physical effort and is physically harder to do than is electrical work in maintenance. A construction electrician is required a run 3" pipe, pull wire cable, and engage in other activities requiring strenuous physical effort, while in maintenance, the employee need only be available to answer complaints and perform duties such as changing lamps and work of a similar nature.
Dr. Salatich, who treated the plaintiff from shortly after his accident occurred until the time of the trial, stated that the plaintiff could not, because of his injury, *92 do work imposing demanding physical activities.
The jury was properly charged that the impairment of future earnings and loss of earnings are compensable items of damages. I am of the opinion that the jury included this consideration in its determination of the amount of the award and that the record substantiates by a preponderance of evidence and with reasonable certainty its finding. Accordingly, I am of the opinion that the jury did not abuse the broad measure of discretion placed in it. I respectfully dissent.